



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUN 12

CLERK'S OFFICE
AT BALTIMORE

BY _____

**U.S. Department of Justice**

*United States Attorney*

*District of Maryland*

| | | |
|---|---|---|
| *Rachel Miller Yasser*<br>*Assistant United States Attorney*<br>*Rachel.Yasser@usdoj.gov* | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | *DIRECT: 410-209-4922*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

April 6, 2014

Stephen R. Tully, Esq.
Seigel Tully and Furrer, LLC
501 Fairmount Avenue, Suite 100
Towson, MD 21286

    Re:    Plea Letter
           United States v. Baldwin Nnamdi Chukweumeka Osuji
           <u>Criminal No. JKB-14-021</u>

Dear Counsel:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 18, 2014 it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

      1.    The Defendant agrees to plead guilty to Counts One and Two of the Indictment now pending against him, which charge him with Bank Fraud and Aggravated Identity Theft, in violation of 18 U.S.C. §§1344 and 1028A. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

<u>Elements of the Offenses</u>

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One: Bank Fraud</u>

      a.    That the Defendant knowingly and willfully executed a scheme to defraud a financial institution or to obtain monies under the custody and control of a financial institution by means of material false or fraudulent representations in the District of Maryland; and

-1-

GOVERNMENT'S EXHIBIT NO. 1
CASE NO.: JKB- '14-021
IDENTIFICATION: 6/11/14
ADMITTED: 6/11/14

  b. That the Defendant knowingly executed or attempted to execute the scheme with the intent to defraud the bank; and

  c. That at the time of the execution of the scheme, the financial institution was insured by the Federal Deposit Insurance Corporation.

### Count Two: Aggravated Identity Theft

  a. During and in relation to a felony in violation of the United States Code, to wit, Bank Fraud, as charged in Count One of the Superseding Indictment and with the elements mentioned above;

  b. The Defendant knowingly transferred, possessed, or used a means of identification of another person without lawful authority, in the District of Maryland.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Count One: Bank Fraud- a term of imprisonment of thirty (30) years, a term of supervised release of five (5) years, and a fine of $1,000,000; Count Two: Aggravated Identity Theft - imprisonment for two (2) years to run consecutive to any term of imprisonment imposed on the other count, followed by a term of supervised release of one (1) year, and a fine of $250,000. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

  a. If the Defendant had persisted in his plea of not guilty, he would have had

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Courts pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding,

3

however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

### Bank Fraud (Count One)

a. The Base Offense Level is 7, pursuant to U.S.S.G. §2B1.1(a)(1).

b. Because the loss is more than $120,000, the offense level is increased by 10 levels pursuant to U.S.S.G. §2B1.1(b)(1)(F), resulting in an adjusted offense level of **17**.

c. Because the offense involved 50 or more victims, the offense level is increased by 4 levels pursuant to U.S.S.G. §2B1.1(b)(2)(B), resulting in an adjusted offense level of **21**.

d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. **Thus, the total adjusted offense level is 18.**

4

### Aggravated Identity Theft (Count Two)

Pursuant to § 2B1.6, there is a mandatory term of imprisonment of two (2) years for Count Two, which is to run consecutive to any sentence imposed for Count One.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a reasonable sentence pursuant to 18 U.S.C. § 3553(a).

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

11. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and " 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Restitution is estimated at approximately **$128,256.21.**

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. §1291 or otherwise, to appeal the Defendant's conviction.

5

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court

will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Rachel M. Yasser
Assistant United States Attorney

7

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_4/11/14_
Date

_[signature]_
Baldwin Nnamdi Chukweumeka Osuji

I am Mr. Osiuji's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_4/11/14_
Date

_[signature]_
Steven Tully, Esq.

8

## ATTACHMENT A

## STIPULATED FACTS – UNITED STATES v. OSUJI

*If this matter had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

The Defendant, Baldwin Nnamdi Chukweumeka Osuji ("**OSUJI**"), was born in 1988, and is a resident of Lanham, Maryland.

Between at least in or about May 2011 through in or about April 2013, **OSUJI** engaged in a scheme and artifice to defraud financial institutions and to obtain monies from third party bank accounts owned by, and under the custody of, such financial institutions ("the scheme to defraud"). It was part of his scheme to defraud that **OSUJI** would use the telephone to call financial institutions and impersonate victims, using victims' personal identifying information ("PII"), in order to gain access to victim bank accounts. **OSUJI** obtained the victims' PII from a third party.

Once access was granted to victim bank accounts, **OSUJI** would access the accounts through financial institution websites, change the online identification and password, and take over control of the bank account. **OSUJI** would print victim check images online and use those images to reproduce fraudulent victim checks, using the bank account information of the victims as well as means of identification of the victims, for example, their names and signatures.

**OSUJI** and others would then deposit these fraudulent checks into bank accounts of individuals associated with the fraud scheme. **OSUJI** and others subsequently utilized the personal identifying information of individuals believed to be associated with the fraud scheme to take and attempt to withdraw monies from these accounts.

**OSUJI** used a telephone number ending in 3013, and registered to his known address, to call the Bank of America call center over 400 times between June 2011 and July 2011, inquiring into the accounts associated with victim "M.A.," and at least 15 other Bank of America account holders.

On or about May 4, 2012, **OSUJI**, as part of his scheme to defraud, entered a PNC branch located in Eastgate Plaza, Lanham, Maryland and was captured on video surveillance depositing a fraudulent Bank of America check in the amount of "$9,185.00" and bearing the name "M.A," into the PNC checking account of "T.D."

The next day, May 5, 2012, **OSUJI** and another person unknown to the Grand Jury returned to the Lanham, Maryland PNC branch location at Eastgate Plaza and used the PNC debit card belonging to "T.D." to withdraw $500.00 cash from "T.D.'s" account. That same day, four U.S. Postal Service money orders in amounts of approximately $500 each were purchased

1

from the U.S. Post Office located in Greenbelt, Maryland, using "T.D.'s" debit card, and paid to the order of **OSUJI** at his known residence.

It was further part of the scheme to defraud that, on or about February 14, 2013, **OSUJI** entered a PNC branch located in Eastgate Plaza, Lanham, Maryland and was captured on video surveillance depositing a fraudulent Bank of America check in the amount of "$8,845.00" and bearing the victim name "M.A," into the PNC checking account of "S.H."

The next day, on or about February 15, 2013, **OSUJI** returned to the Lanham, Maryland PNC branch location at Eastgate Plaza and attempted to withdraw funds from the PNC checking account of "S.H."

On or about April 5, 2013, a federal search warrant was executed at **OSUJI**'s residence. **OSUJI** possessed at his residence and on his computer various debit cards used in connection with the scheme to defraud, copies of fraudulent checks, check stock for making fraudulent checks, and documents detailing victim account information.

In addition to the victims mentioned above, **OSUJI** defrauded and/or utilized the personal identifying information of at least fifty-four (54) individuals. The actual loss associated with the fraud is approximately $128,256.21

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_4/11/14_
Date

_4/11/14_
Date

_Baldwin Nnamdi Chukwuemeka Osuji_

_Steven Tully, Esq._

2